## CAGWIN *v.* BUERKLE.

Decided October 17, 1891.

*Trust—Conveyance of land to build town—Failure—Improvements.*

Land was conveyed upon condition that the grantee should build a depot for a newly constructed railroad and other buildings, with the view of securing the location upon the land of a prospective town, it being agreed that the grantor and grantee should share the profits to be derived from sale of the land. The grantee in good faith complied with the condition, but the town was located elsewhere. In a suit by the grantor to annul the conveyance, *held*, the object of the trust having failed, the grantee held in trust for the grantor, but was entitled to re-imbursement for moneys expended for improvements and taxes.

APPEAL from *Arkansas* Circuit Court in chancery.

JOHN A. WILLIAMS, Judge.

*P. C. Dooley* for appellants.

1. Appellants complied with their agreement.

2. No fraud is proven, and a rescission should not be had unless the parties can be placed in *statu quo.*

3. Appellant was certainly entitled to pay for ameliorations, expenses and taxes.

*M. A. Austin* for appellee.

1. The contract was fraudulently procured. The inducements were not *bona fide.* Story, Eq. Jur., secs. 192–3 ; 2 Pom. Eq. Jur., secs. 873, 977.

2. The company took with notice of the trust. 2 Dev. on Deeds, sec. 738.

3. The decree below was just and equitable. The buildings with the lots upon which they stood were alloted to appellants.

BATTLE, J. Adam and Martin Buerkle, by separate deeds respectively, conveyed to Harry Cagwin, as trustee for the "Grand Prairie Land and Building Company of Arkansas," certain lands which they severally owned, upon condition that Cagwin, as such trustee, would build or cause to be built a respectable depot on or before the 1st day of May, 1885 ; that

the "Grand Prairie Land and Building Company of Arkansas" would survey and lay off the land conveyed into streets, alleys and blocks, and, from time to time and as it should be deemed necessary, subdivide the blocks into lots, and would " cause and permit suitable buildings to be erected during the year" 1885 ; that the trustee, his heirs or assigns, would pay to each grantor one-half of the proceeds of the sale of all the land conveyed by him, except the proceeds of such land as was needed or should be deemed suitable for donation, and the lots upon which the trustee should erect buildings; and that, in the event the conditions of the conveyance, or any part thereof, were not performed, the grantor, his heirs or assigns, should have the right to consider the lands forfeited, and to dispose of them in the same manner he could have done if such conveyances or agreements had never been made. Afterwards, on, to wit, the 29th day of May, 1886, Adam Buerkle, having previously acquired all the right, claim and interest of Martin Buerkle in and to the lands conveyed by him (Martin) to Cagwin as trustee, brought this action in the Arkansas circuit court to set aside the deeds executed by himself and Martin Buerkle, on the grounds, they had been induced to execute them by fraud, and the conditions thereof had not been performed. The circuit court cancelled the deeds, except as to the buildings erected by the company on the land and the ground on which they stand, and failed to allow anything to either of the defendants for moneys expended on the lands ; and the defendants appealed.

The conditions on which the lands were conveyed are contained in contracts made by the parties to the deeds at the same time the deeds were executed, and are as vaguely set forth as they are in this opinion. The trustee was to build a depot, and the company was " to permit and cause " to be erected suitable buildings during the year 1885. Where the depot was to be built, and what the suitable buildings were to be, and where they were to be erected, is nowhere stated in the deeds or contracts. Plaintiff alleged in his complaint

that the buildings were to be, "a town hall 40 by 120 feet, two stories high; a hotel 40 by 100 feet, three stories high; a high-school building to cost not less than $8000; a nice church; a grist mill; several store-houses; and a factory, in which not less than one hundred men would be employed." But the evidence adduced to prove this is not sufficient or competent to sustain the allegation.

To understand the contracts, which contain the conditions upon which the lands were conveyed, it is necessary to read them in the light of the accompanying circumstances. The lands conveyed are adjacent to the town of Stuttgart, in this State, and are north of and bordering upon the St. Louis, Arkansas and Texas Railroad. The railroad at the time the deeds were executed had been recently completed; no depot in that vicinity had been built; and the people on the south and opposite side of the railroad were striving to build the town of Stuttgart on their side, and the people on the north side were equally anxious to build it on that side, the town being then in embryo. It was generally thought that the establishment of a station and depot on either side of the railroad would give that side a controlling advantage. Under these circumstances the deeds and contracts in question were made. It is obvious that the object sought to be secured by their execution was the building of a town on the lands conveyed, and that the depot and suitable buildings were to be on the lands, and such as would conduce to the building of the town. Time was important in the struggle between the people on the two sides of the railroad to build up a town. Appreciating this fact, the parties stipulated that the depot should be completed on or before the first day of May, 1885, the deeds and contracts having been executed on the 11th day of December, 1884, and that the suitable buildings should be erected in the same year (1885). Believing, doubtless, that the struggle for the town would be short and decisive, it was stipulated that, if the buildings were not erected within the time agreed, the conveyances should be void. This stipulation was evidently intended to

secure such progress in the building of the town on the north side in the year 1885 as to decide the struggle, and that the town of Stuttgart should be built on that side. This was the manifest object of the trust created by the conveyances which this action was instituted to set aside, and by the contracts made at the same time.   Has it failed?

**Effect of failure of trust.**  A house built for the depot was practically completed before the first day of May, according to contract, and by the last of June following two other buildings, a store-house and dwelling, were erected on the land.   The officer in charge of the railroad at the time agreed to accept and use the house erected for a depot for the purpose for which it was built, but before it was actually accepted he was removed and another person was put in charge.   The people on the south side protested against its acceptance and use, and they prevailed.   The railroad company refused to accept and use the house as a depot, and soon thereafter the land and building company withdrew from the lands the mechanics they had employed in erecting houses, and ceased work under the contracts.   The south side secured the depot, and the town followed.   While the evidence shows that only four houses were built on the north side, it shows that a town of respectable size had been established on the opposite side.   In the lapse of more than a year after this suit was brought no material change was made in the improvements on the north side.   The company made no further improvements.   The decided weight of the evidence shows that the object of the trust has failed.   The result is, the company, to which Cagwin conveyed with notice of the trust vested in him, holds the lands (the lots built on included) since the failure of the trust, not for its own benefit, but for Adam Buerkle, as a resulting trust, and is answerable to him for them.   *Easterbrooks* v. *Tillinghast,* 5 Gray, 17.

**When trustee entitled to compensation for improvements.**  We find no evidence sufficient to satisfy us that the land and building company failed to make a *bona fide* effort to accomplish the object of the trust or to perform its contract.   It practically completed the house for a depot within the

time stipulated and made an effort to induce the railroad company to accept it. It was authorized to determine what the suitable buildings to be erected in 1885 should be, and there is no evidence that it did not exercise this discretion in a *bona fide* manner. It should not, therefore, be required to bear all the losses occasioned by the failure of the joint undertaking, but should be reimbursed for all moneys reasonably expended by it in erecting the buildings on the lands in pursuance of the contracts made by Cagwin, as trustee, with the grantors in the deeds executed to him, and for the hire of persons employed to superintend the erection of the buildings, with lawful interest, and for all moneys expended in paying taxes on the lands, if any, with interest thereon, less any sums of money, or value of property, it has received on account of the rent or sale of such improvements or the sale of any part of said lands, if any, sold by it, before the commencement of this action, in the exercise of the authority vested in it, or of the rent of said lands, and converted to its own use. As to the survey it caused to be made, it is entitled to nothing. It employed incompetent men to make it, and it proved worthless through the failure of the company to do its duty in respect to the same.

The circuit court erred in decreeing that the company was entitled to hold the land or lots on which the buildings were erected as its own property, and in failing to render a judgment in favor of it for the moneys expended for improvements and taxes on the lands. The decree, in so far as it is consistent with this opinion, is affirmed, and in other respects is reversed, and the cause is remanded for other proceedings.